IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAUL E. WEBER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-283 (MN) |
| | ) | |
| ROBERY MAY, Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

## **MEMORANDUM OPINION**

Paul E. Weber – *Pro Se* Petitioner.

Andrew Vella – Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents

February 8, 2023
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court are three Motions filed by Petitioner Paul E. Weber: (1) a Motion to Withdraw the September 30, 2022 Memorandum Opinion denying his § 2254 Petition; (2) a Rule 59(e) Motion for Reconsideration of the September 2022 decision; and (3) a Motion to Supplement the Motion for Reconsideration (which presents the proposed supplement). Petitioner's Motion to Withdraw the September 2022 decision does not set forth any arguments, as opposed to his Motion for Reconsideration that was filed simultaneously. Therefore, the Court will deny as moot the Motion to Withdraw, grant Petitioner's Motion to Supplement the Rule 59(e) Motion, and focus on Petitioner's supplemented Motion for Reconsideration. In turn, after considering Petitioner's supplemented Motion for Reconsideration, the State's Response, Petitioner's Reply, the Memorandum Opinion dated September 20, 2022, and the record, the Court will deny his supplemented Motion for Reconsideration for the reasons set forth below.

## I.     BACKGROUND

In 2001, a Delaware Superior Court jury convicted Petitioner of second degree forgery and misdemeanor theft due to his forgery of a check for $300. *See Weber v. State*, 812 A.2d 225 (Table), 2002 WL 31235418, at *1 (Del. Oct. 4, 2002); *Weber v. State*, 197 A.3d 492 (Table), 2018 WL 5993473, at *1 (Del. Nov. 13, 2018). The Superior Court sentenced him to thirty days of imprisonment at Level V for each conviction. *See Weber,* 2002 WL 31235418, at *1. Petitioner appealed his convictions and sentences to the Delaware Supreme Court, which dismissed the appeal for lack of jurisdiction because Petitioner's term of imprisonment for each conviction did not exceed one month. *Id.* Thereafter,

> [o]n August 18, 2004, at approximately 10:00 p.m., 74 year old Frederick Naspo stopped to refuel his car at the Shell gas station on the corner of Kirkwood Highway and Duncan Road, in New Castle County. As Naspo got out to pump gas, a man with a cigarette behind his ear approached him at the pump. Naspo said, "Good

evening," and asked the man whether he intended to smoke near the gas pump. According to Naspo, the man replied, "No, I'm going to take your car." With both hands, the man grabbed for Naspo's car keys, twice telling Naspo that he had a gun. Failing to get the car keys, the man ran away. Naspo had the gas station attendant call the police.

At 10:13 p.m., Delaware State Police Sergeant Mark Hawk responded to the Shell gas station and met with Naspo. Naspo told Hawk that his assailant was a white male, about 35 years old and approximately five feet eight inches tall, 160 pounds, wearing jeans and a loose fitting blue shirt. While speaking with Naspo, Hawk learned that police had a suspect detained in the parking lot of a nearby Sleepy's mattress store, about a block and a half away. The suspect appeared to match Naspo's description of his assailant.

Hawk drove Naspo to the Sleepy's parking lot for a showup identification of the detained suspect, who was [Petitioner], a man whom Hawk had encountered several times before, dating back to 1984. Naspo viewed [Petitioner] from the backseat of Hawk's patrol vehicle. To Naspo, it appeared that [Petitioner] wore military fatigues; however, at trial Hawk testified that [Petitioner] had worn blue jeans and an oversized blue shirt. Unconvinced that [Petitioner] was his assailant, Naspo told police that [Petitioner] was not the man that assaulted him. Police released [Petitioner] and drove him home.

That same night, Hawk interviewed the Shell gas station attendant and learned that the gas station had a video surveillance system. Because the attendant did not have access to the surveillance system, Hawk would have to return in the morning to view the tapes. On August 19, 2004, at around 10:00 a.m., Hawk returned to the gas station and viewed the video surveillance tape. Upon reviewing the footage, Hawk recognized that Naspo's assailant was [Petitioner]. Hawk testified that the man in the video had the same facial features as [Petitioner], and wore the same clothing Petitioner had worn when he was detained in the Sleepy's parking lot: an oversized blue shirt and blue jeans.

Hawk went to [Petitioner's] residence with an arrest warrant and arrested [Petitioner] in his bedroom. At the time, [Petitioner] wore nothing but his underwear, so Hawk grabbed a pair of blue jeans and a blue shirt from the floor of [Petitioner's] bedroom. The police transported [Petitioner] to Troop 2 for booking and processing.

*Weber v. State*, 38 A.3d 271, 273-74 (Del. 2012).

Petitioner was indicted on charges of attempted first degree robbery and attempted first degree carjacking. *See Weber v. State*, 971 A.2d 135, 140 (Del. 2009). In 2005, a Delaware Superior Court jury convicted him of both charges, and he was sentenced as an habitual offender to a total of twenty-eight years of imprisonment at Level V (twenty-five years for the robbery conviction and three years for the carjacking conviction). *See id*. On appeal, the Delaware Supreme Court affirmed Petitioner's conviction for attempted first degree carjacking, but reversed his conviction for attempted first degree robbery, and remanded the case back to the Superior Court for a new trial. *See id.* at 142 (hereinafter "*Weber I*"). In 2010, the State retried Petitioner for attempted first degree robbery, and a Delaware Superior Court jury convicted him of that offense. *See Weber v. State*, 38 A.3d 271, 274 (Del. 2012) (hereinafter "*Weber II*"). The State moved to declare Petitioner a habitual offender, and the Superior Court granted that motion following a hearing. *See id*. Petitioner's felony conviction in 2001 for forging a $300 check served as one of the predicate offenses for Petitioner's habitual offender status. *See Weber*, 2018 WL 5993473, at *1. Petitioner was subsequently sentenced to twenty-five years of imprisonment at Level V for the robbery conviction. The Delaware Supreme Court affirmed Petitioner's convictions and sentence on February 21, 2012. *See Weber II*, 38 A.3d at 278. Petitioner petitioned the United States Supreme Court for a writ of certiorari, which the Supreme Court denied on October 1, 2012. *See Weber v. Delaware*, 568 U.S. 865 (2012).

In February 2013, the attorney who represented Petitioner in his Delaware criminal trial and direct appeal ("defense counsel") filed the first Petition in this proceeding, and the case was assigned to the Honorable Sue L. Robinson. Given the apparent conflict concerning defense counsel's representation of Petitioner in this proceeding, Judge Robinson stayed the case in July 2014. In 2017, while still stayed, the case was reassigned to the Honorable Leonard P. Stark. The

stay was lifted on February 28, 2019, after which Petitioner filed an amendment to his Petition adding several more grounds for relief.  The State filed an Answer in opposition, and then a Supplemental Answer.  On September 30, 2022, Judge Stark denied the Petition.  (D.I. 128; D.I. 129).  Petitioner filed a notice of appeal from that decision on October 10, 2022.  (D.I. 132). On October 27, 2022, Petitioner filed a Motion to Withdraw the Petition and a Rule 59(e) Motion for Reconsideration of the Denial of the Petition.  (D.I. 135; D.I. 136).  On October 28, 2022, the Third Circuit stayed Petitioner's appeal pending the disposition of the two aforementioned Motions.  (D.I. 137).  The case was re-assigned to the undersigned's docket on November 23, 2022. On November 30, 2022, the Court ordered the State to respond to Petitioner's Motions.  (D.I. 139). After granting the State's request for an extension of time to file a response, Petitioner filed a Motion to Supplement his Rule 59(e) Motion for Reconsideration.  (D.I. 140).  The State filed its Response to Petitioner's Motions on January 12, 2023.  (D.I. 143).

## II.   <u>GOVERNING LEGAL PRINCIPLES</u>

Rule 59(e) of the Federal Rule of Civil Procedure is "a device [] used to allege legal error,"[1] and may only be used to correct manifest errors of law or fact or to present newly discovered evidence.  *See Howard Hess Dental Labs, Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010).  The scope of a Rule 59(e) motion is extremely limited.  *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. Dec. 22, 2011); *see also Brambles USA Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990).  The moving party must show one of the following in order to prevail on a Rule 59(e) motion: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice.  *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677

---

[1]     *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003).

(3d Cir. 1999). Although the Third Circuit has "never adopted strict or precise definitions for 'clear error of law or fact' and 'manifest injustice' in the context of a motion for reconsideration," at a minimum, a manifest error or injustice is a "direct, obvious, or observable error [. . .] that is of at least some importance to the larger proceedings." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir 2018). More specifically, when determining whether a decision resulted in a manifest injustice, a court must focus "on the gravity and overtness of the error." *Id*. at 312. Finally, a "motion for reconsideration is not to be used as a means to reargue a case or to ask a court to rethink a decision it has made." *United States v. Kennedy*, 2008 WL 4415654, at *1 (W.D. Pa. Sept. 26, 2008).

## III. DISCUSSION

Petitioner asks the Court to reconsider the denial of Claims One, Five, Eight, Ten, Eleven, Twelve, Thirteen, and Sixteen because the "Court did not rely on the actual record and grossly misstated [his] claims." (D.I. 136 at 1). The Court will address Petitioner's arguments *in seriatim*.

### A. Claim One: Double Jeopardy

In Claim One of his Petition, Petitioner argued that the Delaware Supreme Court violated his right to be protected from double jeopardy by remanding his first degree robbery charge back to the Superior Court rather than acquitting him on that charge. He contended that the Delaware Supreme Court's use of the term "sufficient evidence to support [Petitioner's] acquittal" in *Weber I* amounted to an implied judicial acquittal on the charge of first-degree robbery, thus barring retrial on that charge.

In his Motion for Reconsideration, Petitioner asserts that

> [t]he Court improperly pins its reasoning that 'sufficient evidence to support [Petitioner's] acquittal' is not an implied acquittal based on the 'construct' of the Delaware Supreme Court's declaration and its context with respect to a lesser included offense. This Court failed to adhere to the ordinary usage of the English language and

5

corresponding United States precedent. [. . .]  When the state court found sufficient evidence to support [Petitioner's] acquittal it was not conditioned on finding there was sufficient evidence to support a conviction of a lesser included offense.  It must be assumed that the state court believed what it said, which is tantamount to an implied acquittal.  This Court erred when it relied on the state court's depiction of its decision. [. . .] The phrases 'sufficient evidence to support an acquittal' and 'sufficient evidence . . . to support a conviction' are independent clauses and each stands on its own.  The clauses are not dependent on one another.  An independent clause does not allow the Court to go outside the clause to contradict its meaning.  Of course, the clause was in the context of a lesser included offense, but that fact does not alter its essence.

(D.I. 136 at 3-5)

Petitioner's argument essentially reiterates the allegations asserted in his Petition and Traverse.  (*See, e.g.*, D.I. 1 at 28-31; D.I. 105 at 10-15).  When denying Claim One, Judge Stark explained that the "issue is whether the Delaware Supreme Court's ruling in Petitioner's direct appeal that the trial court erred by not including a lesser included offense instruction when it instructed the jury on attempted first degree robbery constituted an acquittal of the attempted first degree robbery conviction for double jeopardy purposes."  *Weber v. May*, 2022 WL 4598567, at *8 (D. Del. Sept. 30, 2022).  Judge Stark identified the relevant Supreme Court precedent applicable to double jeopardy issues, and further noted that, "[a]lthough federal law determines whether a prosecution violates the Double Jeopardy Clause, the Supreme Court has looked to state law to determine whether a state court's decision constituted an acquittal." *Id.* at *6.  Judge Stark then reviewed Petitioner's double jeopardy argument in conjunction with the record for the Delaware Supreme Court's 2009 appellate ruling ("*Weber I*") and the Delaware Supreme Court's 2015 decision affirming the Superior Court's denial of Petitioner's Rule 35 motion ("*Weber 2015*

*Rule 35*") which raised the same double jeopardy argument.[2]  After determining that "neither the Superior Court's initial reason for not providing the lesser included offense, nor the *Weber I* Court's reason for concluding that the lesser included offense should have been given, constituted a ruling that the evidence was insufficient to convict Petitioner of first degree robbery," Judge Stark held that the Double Jeopardy clause was not implicated because "the *Weber I* Court's ruling did not adjudicate the ultimate question of Petitioner's factual guilt or innocence of first degree robbery." *Id*. at *8.

After reviewing the analysis for denying Claim One in context with the record and Petitioner's argument for reconsideration, the Court concludes that Petitioner has failed to present

---

[2]      In *Weber 2015 Rule 35*, the Delaware Supreme Court began its analysis by identifying the governing Delaware law:  (1) *Monroe v. State*, 652 A.2d 560, 567 (Del. 1995) ("Where an appellate court overturns a jury's guilty verdict on insufficiency of evidence grounds, the Double Jeopardy Clause of the United States Constitution bars retrial of the defendant."); and (2) 11 Del. Code § 207 ("There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination by the court that there was insufficient evidence to warrant a conviction.  A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.") *Id*.  The Delaware Supreme Court then opined:

> This Court's finding in *Weber I* that there was "sufficient evidence to support an acquittal of the First Degree Robbery Charge" is not synonymous to a finding of insufficient evidence to support [Petitioner's] conviction.  In *Weber I*, we reviewed [Petitioner's] claims and determined that the trial court's failure to give an adequate instruction on the lesser-included offense of Offensive Touching required reversal of [Petitioner's] Attempted Robbery conviction.  Our decision cannot be reasonably construed as a finding that the evidence was insufficient to support [Petitioner's] conviction because our inquiry was limited to whether the instruction was available as a matter of law, and if so, whether the evidence at trial supported a conviction on the lesser-included offense.

*Weber*, 2015 WL 2321960, at *3 (cleaned up).

any evidence that Judge Stark misunderstood the facts or misinterpreted the law as it applies to Claim One.  Thus, the Court will deny Petitioner's request to reconsider the denial of Claim One.

### B.    Claim Five:  Insufficient Evidence

In Claim Five of his Petition, Petitioner argued that the Delaware Supreme Court erred by denying his claim that there was insufficient evidence to support his conviction for attempted robbery because the State failed to prove the elements of attempt, substantial step, specific intent, threat of force, and permanent deprivation.  (D.I. 1 at 88).  In his Motion for Reconsideration, Petitioner again essentially re-asserts the same argument that he presented in Claim Five of his Petition, and contends that Judge Stark erroneously denied Claim Five because he misapprehended the facts by "rel[ying] on the facts contained in the state court decisions, which in turn were adopted [. . .] verbatim by the respondents' filings."  (D.I. 136 at 6).

It is well-settled that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).  Here, Judge Stark evaluated the facts in the state court record and applied controlling Supreme Court precedent when rejecting Petitioner's sufficiency of the evidence argument.  Accordingly, the Court concludes Petitioner's instant argument fails to warrant reconsideration of the denial of Claim Five, because he merely re-asserts the same argument presented in the Petition.

### C.    Claim Eight: Dual Punishments for Attempted Carjacking and Attempted Robbery Convictions Violated Double Jeopardy

In Claim Eight of his Petition, Petitioner argued that his dual punishments for attempted carjacking and attempted robbery violated the Double Jeopardy Clause.  In his Motion for Reconsideration, Petitioner contends that Judge Stark "simply adopted the state court's cursory analysis without considering [his] multi-faceted arguments," and then proceeds to present the

identical arguments about cumulative arguments that he asserted in his Petition. Contrary to Petitioner's assertion, however, Judge Stark thoroughly considered his cumulative punishment arguments within the framework established by the applicable Supreme Court precedent – *Missouri v. Hunter*, 459 U.S. 359 (1983). *See Weber*, 2022 WL 4598567, at *17-18. The fact that Petitioner disagrees with the reason for denying Claim Eight does not warrant reconsideration of that Claim.

### D.     Claim Nine: Rejection of Plea Offer and Failure to Conduct Evidentiary Hearing

In Claim Nine of his Petition, Petitioner contended that the Delaware Supreme Court erred by holding that the Superior Court was not required to enforce a plea offer that Petitioner had rejected. Petitioner challenged the Delaware state courts' holding that he had rejected the plea offer, and argued that there actually had been an enforceable plea agreement because he and the State had reached a "meeting of the minds" and he detrimentally relied on the plea offer by not preparing for trial. During the pendency of this proceeding, Petitioner filed a separate Motion for an Evidentiary Hearing on several Claims in his Petition, including Claim Nine. (D.I. 64 at 9-14). Petitioner argued that the Delaware "state courts unilaterally (and erroneously) fashioned their own version of the breach without any evidentiary support whatever." (*Id*. at 9). Citing 28 U.S.C. § 2254(e)(2), Judge Stark denied the Motion for an Evidentiary Hearing after determining that Petitioner did not indicate "any evidence other than that already contained in the record that would help advance his claims." (D.I. 93 at 1). Thereafter, when addressing Claim Nine in the Memorandum Opinion denying the Petition in its entirety, Judge Stark opined that

> Petitioner has not provided any evidence to support his version of the facts, much less the clear and convincing evidence required by 28 U.S.C. § 2254(e)(1). Consequently, the Court concludes that the Superior Court reasonably determined the facts in light of the evidence presented when it determined that Petitioner and the

> prosecutors did not reach an agreement with respect to the terms of Petitioner's plea.

*Weber*, 2022 WL 4598567, at *20.

In the instant Motion for Reconsideration, Petitioner contends that Judge Stark erred by denying Claim Nine without an evidentiary hearing because Judge Stark ignored the "evidence" Petitioner provided to support his version of events. (D.I. 136 at 12 n.47, referring the Court to D.I. 1 at pp. 125). The "evidence" to which Petitioner refers is his original counsel's summary of the circumstances surrounding the plea offer contained in the initial Petition in this proceeding. (*See* D.I. 1-2 at 11-13). In other words, the alleged "evidence" is still Petitioner's unsupported version of the events surrounding the plea offer. Given Petitioner's continued failure to identify any other evidence in the record supporting his version of the underlying allegations in Claim Nine, the Court concludes that the instant Motion does not warrant reconsideration of either the refusal to grant an evidentiary hearing on Claim Nine or the denial of Claim Nine as meritless.

**E.     Claim Ten:  Detective Hawk's Identification Testimony**

In Claim Ten of his Petition, Petitioner argued that the State presented insufficient evidence to support his identification and that the circumstances of Detective Hawk's out-of-court identification were suggestive and violated his due process rights. Judge Stark denied Petitioner's arguments, concluding: (1) the State presented sufficient evidence to support Petitioner's identification under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); and (2) Detective Hawk's identification of Petitioner was not impermissibly suggestive under the standards set forth in *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012) and *Neil v. Biggers*, 409 U.S. 188 (1972). *See Weber*, 2022 WL 4598567, at *20-21.

In his Supplement to his Motion for Reconsideration, Petitioner first argues that the recent Third Circuit decision, *United States v. Livingston*, 2022 WL 16734500 (3d Cir. Nov. 7, 2022), is

dispositive of his insufficient evidence claim and demonstrates that Judge Stark misapplied the *Jackson* standard to the facts of his case. Petitioner is mistaken. In *Livingston*, the defendant was convicted of multiple bank robberies. On appeal, the Third Circuit concluded that the trial judge properly admitted a probation officer's identification of Livingston because: (1) the probation officer had met with Livingston twice in the five days after the bank robbery for a total of about ninety minutes; (2) the probation officer was familiar with what Livingston looked like at the time of the robbery; and (3) the officer had met Livingston while he still wore the beard that he had during the first robbery but later shaved off. *Id*. at *2. Although the *Livingston* court determined the probation officer did not "[know] the defendant over time and in a variety of circumstances," because of the officer's limited contact with Livingston, the probation officer's identification testimony was nonetheless admissible. *Id*.

Contrary to Petitioner's contention, the *Livingston* decision does not change the result in this proceeding. Like the probation officer in *Livingston*, although Detective Hawk may not have known Petitioner "over time and in a variety of circumstances," the record established that Detective Hawk was familiar with Petitioner and had seen him on the day of the offenses. Consequently, Petitioner has presented nothing to demonstrate that Judge Stark misapplied *Jackson* when denying his insufficient evidence of identification argument.

Petitioner also contends that Judge Stark misapplied *Biggers* to his Claim that Detective Hawk's out-of-court identification was the product of impermissible suggestion by failing to discuss in detail the five *Biggers* factors when evaluating his Claim. Petitioner is mistaken. Pursuant to *Biggers*, courts must engage in a two-step inquiry when determining if the admission of an out-of-court identification violated a defendant's due process right. *See Perry*, 565 U.S. at 238 (citing *Biggers*). The first step requires determining if the challenged pretrial identification

procedure was impermissibly suggestive.  *See id*.  If the pretrial identification procedure is found

to be impermissibly suggestive, then the second step of the *Biggers* test requires considering the

totality of the circumstances to determine if the witness's identification was nonetheless reliable

by considering five specific factors.  *Id*.  If, however, the first step of the *Biggers* test is not satisfied

because the identification procedure was not unduly suggestive, then the defendant's due process

rights were not violated by the admission of the out-of-court identification.  Rather, the "reliability

of properly admitted eyewitness identification, like other parts of the prosecution's case, is a matter

for the jury."  *Id*

    In this case, even though the Delaware Supreme Court determined that the identification

of Petitioner was not unduly suggestive, it proceeded to the second step of the *Biggers* test and

also determined that the identification was reliable.  Specifically, the Delaware Supreme Court

opined:

> Finally, Hawk's identification of [Petitioner] was not unreliable. We
> look at the totality of the circumstances and consider the following
> factors, in assessing the reliability of an out of court identification:
>
>> the opportunity of the witness to view the criminal at
>> the time of the crime, the witness' degree of
>> attention, the accuracy of the witness' prior
>> description of the criminal, the level of certainty
>> demonstrated by the witness at the confrontation, and
>> the length of time between the crime and the
>> confrontation.
>
> Reviewing the instant facts, we note that the Sleepy's parking lot
> was well lit and Hawk had ample opportunity to observe
> [Petitioner's] physical characteristics shortly after the crime. Hawk
> reviewed the surveillance video and made his identification less than
> twenty-four hours after observing [Petitioner] in the parking lot. As
> noted above, Hawk also had familiarity with [Petitioner's]
> appearance before making the out of court identification. Hawk
> testified that he had met [Petitioner] several times before the current
> incident, dating back to 1984. Moreover, at trial, the jury had as
> evidence [Petitioner's] arrest photo and the surveillance footage,

> and could weigh the accuracy and reliability of Hawk's
> identification testimony for themselves. Taken together, these
> factors indicate that Hawk's identification of [Petitioner] was not
> unreliable.
>
> Because the identification was neither impermissibly suggestive nor
> unreliable, Hawk's testimony identifying [Petitioner] was properly
> admitted.

*Weber*, 38 A.3d at 277-78.

On habeas review, Judge Stark held that the Delaware Supreme Court's decision that the

identification procedure was not unduly suggestive constituted a reasonable application of *Biggers*

and *Perry*. *See Weber*, 2022 WL 4598567, at *22. Judge Stark further opined,

> Once it determined that Officer Hawk's identification of Petitioner
> was based on his twenty-years of personal and professional
> knowledge of Petitioner's physical characteristics and was not the
> result of an impermissibly suggestive police procedure, the
> Delaware Supreme Court could have properly ended its due process
> inquiry under *Perry* and *Biggers*. Nevertheless, the Delaware
> Supreme Court proceeded to consider the reliability of Officer
> Hawk's identification under Delaware's "totality of circumstances"
> test,[3] thereby going above and beyond the dictates of clearly
> established federal law.

*Weber*, 2022 WL 4598567, at *22. Contrary to Petitioner's argument, having determined that the

Delaware Supreme Court properly found that the identification proceeding at issue was not unduly

or impermissibly suggestive, Judge Stark "did not need to engage in the totality of the

circumstances analysis." *United States v. Roland*, 545 F. App'x 108, 114 (3d Cir. 2013) (citing

*United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991)). Additionally, Petitioner's instant

argument for reconsideration essentially reasserts the same arguments regarding the *Biggers'*

factors he believes should have been expressly considered by the Delaware Supreme Court (and

---

[3]     Delaware's totality of circumstances test requires consideration of the same factors as the
Biggers' test. (*See Weber II*, 38 A.3d at 277 n.21).

13

also by this Court) that he presented in his Petition and Traverse.  (*See* D.I. 1-2 at 20-32;  D.I. 105 at 103-105).  Thus, the Court concludes that Petitioner has not presented any intervening change in law, the availability of previously unavailable evidence, or a clear error of law or fact of the sort that would compel reconsideration of Claim Ten.

### F.    Claim Thirteen:  Sentence Enhancement Based on Prior Forgery Conviction Violated Due Process

> Petitioner was convicted in July 2001 of second degree forgery and misdemeanor theft. He was sentenced to 30 days of imprisonment for each count. The 30-day sentence imposed by the Superior Court did not meet the jurisdictional minimum for appeals set by the Delaware state constitution. Therefore, Petitioner's appeal from those convictions was dismissed.

*Weber*, 2022 WL 4598567, at *29.  On direct appeal from his 2005 convictions for attempted robbery and carjacking, Petitioner argued, *inter alia*, that his due process rights were violated when his 2001 felony forgery conviction was used to enhance the sentence for his 2005 robbery conviction because he had been denied the right to appeal his 2001 felony forgery conviction.  The Delaware Supreme Court denied the due process argument as meritless because there is no federal constitutional right to appeal a state criminal conviction and Petitioner could have "petitioned for relief under Superior Court Criminal Rule 35" or "could have sought certiorari review."  *Weber I*, 971 A.2d at 159-60.  Nevertheless, the Delaware Supreme Court reversed Petitioner's attempted first degree robbery conviction and remanded for a new trial on the basis that the trial judge erroneously denied Petitioner an instruction on the lesser included offense of offensive touching. In April 2010, on retrial, a Superior Court jury convicted Petitioner for attempted first degree robbery.  Petitioner was sentenced as a habitual offender to twenty-five years at Level V for his robbery conviction.  The Delaware Supreme Court affirmed Petitioner's robbery conviction and sentence in February 2012.  *See Weber II*, 38 A.3d at  274.

Thereafter, Petitioner pursued collateral review of his enhanced sentence in his robbery case[4] and in his forgery case.[5]  *See, e.g., Weber v. Quinlan*, 792 F. App'x 214, 217 (3d Cir. 2019). Those attempts were unsuccessful.

In Claim Thirteen of his Petition, Petitioner argued that his due process rights were violated when his 2001 felony forgery conviction was used to enhance the sentence for his 2005 robbery conviction because he had been denied the right to appeal his 2001 felony forgery conviction. (D.I. 58-1 at 15).  As Petitioner recognized in his voluminous filings in this proceeding, the only way to successfully challenge his enhanced sentence, and obtain habeas relief, is to show that his 2001 forgery conviction was illegal.  Nevertheless, pursuant to the rule of non-reviewability

---

[4]  *See, e.g., Weber,* 2018 WL 5993473 (affirming denial of Petitioner's Rule 61 motion filed in his robbery case which raised an argument that defense counsel was ineffective for failing to raise a due process challenge to his forgery conviction); *Weber v. State*, 213 A.3d 1195 (Table), 2019 WL 3268813, at *1 (Del. July 19, 2019) (when affirming the Superior Court's denial of a motion for relief of judgment in Petitioner's forgery case, the Delaware Supreme Court acknowledged that, since Petitioner's 2009 appeal, he "has sought to relitigate the question of whether it was unconstitutional for an unappealable offense to be used to enhance the sentence for his later attempted robbery conviction.").

[5]  The docket for Petitioner's forgery case contains the following entries after his retrial for robbery in 2010:  (1) motion for the appointment of counsel filed and denied in April 2013 (D.I. 97 at 5, Entry Nos. 40 & 41); (2) motion for default, summary, and relief of judgment filed in February 2016 and denied in April 2016 (D.I. 97 at 6, Entry Nos. 48 & 51); (3) motion for relief of judgment filed in April 2018, which the Superior Court explained it was unable to consider due to Petitioner's pending appeal (D.I. 97 at 6-7, Entry Nos. 53 & 56); (4) a petition for writ of mandamus filed in April 2018 and dismissed in June 2018 (D.I. 97 at 8, Entry No. 61); (6) motion for reargument filed in September 2018 (D.I. 97 at 8, Entry No. 62); (7) motion for preparation of transcript at State's expense and motion to withdraw request for transcript at State's expense (D.I. 97 at 9, Entry Nos. 64 & 65); and (8) motion for reconciliation and office conference or hearing filed and denied in December 2019 (D.I. 97 at 9-10, Entry Nos. 70 & 71).  The Court also notes that Entry No. 52 on the docket for Petitioner's forgery case indicates that a "Rule 35 motion for reduction of sentence is denied," but the docket does not contain an entry for a corresponding Rule 35 motion for reduction of sentence.  (*See* D.I. 97 at 6).  In 2019, the Delaware Supreme Court affirmed the Superior Court's denial of a motion to vacate judgment (D.I. 97 at 6-8, Entry Nos. 53 & 61) that Petitioner filed in his forgery case in 2018.  *See Weber,* 2019 WL 3268813, at *3.

articulated in *Lackawanna Cnty Dist. Att'y. v. Coss*, 532 U.S. 394 (2001), a petitioner may not obtain relief for an enhanced sentence by challenging the constitutionality of the predicate state court conviction for which the petitioner is no longer in custody. *See also Daniels v. United States*, 532 U.S. 374 (2001). Petitioner acknowledged *Lackawanna*'s rule of non-reviewability, (D.I. 105 at 127), but argued that he satisfied the Supreme Court's "second exception" to that rule, which applies to "cases in which a petitioner has, through no fault of his own, no means of obtaining timely review of a constitutional claim." (D.I. 105 at 123-130, n.555). He alleged that, contrary to *Weber I*'s identification of available collateral remedies, he has been unable to challenge his forgery conviction via Rule 35(a) and a petition for writ certiorari, thereby demonstrating that "there is actually no process or remedy available for [him] to challenge his forgery conviction." (D.I. 58-1 at 16-19; D.I. 58-2 at 1). Petitioner supported his contention regarding the unavailability and illusory nature of using Rule 35 as a possible remedy by citing Delaware cases articulating the limited nature of a Rule 35 motion and summarizing his unsuccessful challenges under Rule 35 to both his enhanced sentence for his attempted robbery conviction and his 2001 forgery conviction. (D.I. 105 at 119-124). Petitioner supported his contention regarding the illusory nature of using certiorari as a possible remedy by citing Delaware cases discussing the limited nature of a petition for writ of certiorari (D.I. 58-2 at 1-2), but he did not identify any attempt on his part to obtain certiorari review of his 2001 forgery conviction.

Judge Stark denied Petitioner's arguments in Claim Thirteen for two reasons: (1) the Delaware Supreme Court's denial of Petitioner's due process challenge to his enhanced sentence in *Weber I* did not warrant relief under § 2254(d) because there is no federal constitutional right to state appellate review of state criminal convictions and, even though Petitioner was unable to directly appeal his forgery conviction, he "could have challenged his forgery conviction via two

other post-conviction vehicles" that were identified by the Delaware Supreme Court in *Weber I*; and (2) habeas review of Claim Thirteen was unavailable because Petitioner's case did not fall within the only exception to *Lackawanna*'s rule of non-reviewability "expressly recognized by the Supreme Court," namely, "a claim that the prior conviction was unconstitutional because there was a failure to appoint counsel in violation of the Sixth Amendment right to counsel as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)." *Weber*, 2022 WL 4598567, at *30.

In his Motion for Reconsideration, Petitioner contends that Judge Stark erred by holding that habeas review of Claim Thirteen is barred by *Lackawanna* without expressly considering whether *Lackawanna*'s second exception applies in Petitioner's situation. He argues that he fits within the purview of the second exception because his case is one where no channel of review was actually available to him with respect to his expired 2001 forgery conviction due to no fault of his own. More specifically, he asserts that the two collateral remedies the *Weber I* court identified as mechanisms he could have utilized to challenge his 2001 forgery conviction (Rule 35 and certiorari) were illusory, as demonstrated by: (1) the fact that he challenged "the conviction by way of the remedies erroneously cited in *Weber I* [and] directly and collaterally [challenged] his conviction fifteen (15) times" (D.I. 136 at 15); and (2) "Delaware has never permitted a challenge [to] a conviction via Rule 35(a) and certiorari" (D.I. 136 at 13).[6]

---

[6]    The Court notes that Petitioner does not actually present his request for reconsideration in this cohesive manner. Rather, Petitioner asserts the following specific arguments, which the Court has combined in order to address Petitioner's contentions in a logical manner: (1) Judge Stark "blindly accepted the Delaware Supreme Court's decision [in *Weber I*] that [he] could have challenged his prior forgery conviction by way of Rule 35(a) or certiorari without considering [the] myriad of proof that it is simply not true" (D.I. 136 at 13); (2) Judge Stark incorrectly held that Petitioner did not pursue collateral remedies for his 2001 forgery conviction because Petitioner "directly and collaterally challenged his conviction fifteen (15) times" (D.I. 136 at 15); and (3) Judge Stark did not acknowledge *Lackawanna*'s "second exception" (*Id.*).

Distilled to its core, Petitioner contends that the denial of Claim Thirteen as barred under *Lackawanna* was based on both a mistake of fact and law. As explained below, although the Court concludes that the denial of Claim Thirteen was not based on any error that warrants Rule 59(e) relief, the Court finds it beneficial to clarify portions of the denial of Claim Thirteen. *See Banister v. Davis*, 140 S.Ct. 1698, 1708 (2020) ("Even when [Rule 59(e) motions] do not [change judicial outcomes], they give habeas courts the chance to clarify their reasoning or address arguments (often made in less-than-limpid *pro se* petitions) passed over or misunderstood before.").

As Petitioner's main contention is that the *Lackawanna* rule of non-reviewability was not appropriately applied in his case, the Court begins its analysis of Petitioner's instant argument with the *Lackawanna* rule:

> once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Lackawanna*, 532 U.S. at 403–04 (cleaned up). The *Lackawanna* Court recognized only one "exception to the general rule for § 2254 petitions that challenge an enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained," which is "where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon* [. . .]." Yet, a plurality of the Court suggested that there may be an exception in the rare case "in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own." *Lackawanna*, 532 U.S. at 405. Examples of cases falling within the purview of *Lackawanna*'s purported second exception include where a state court has refused without justification to rule on a properly presented constitutional claim, and where, after the time for direct

or collateral review has expired, the defendant obtains compelling evidence that he is actually innocent of the crime for which he was convicted and he could not have uncovered that evidence in a timely manner.  *See Lackawanna*, 532 U.S. at 405.  The *Lackawanna* Court explained that "[i]n such situations, a habeas petition directed at the enhanced sentence may effectively be the first and only forum available for review of the prior conviction."  *Id*. at 406.

According to Petitioner, Judge Stark committed a mistake of law by failing to expressly address the existence and possible application of *Lackawanna*'s purported second exception to his situation.  The Court disagrees.  The second exception was put forth by a three-justice plurality that declined "to determine whether, or under what precise circumstances, a petitioner might be able to use a § 2254 petition in this manner."  *Lackawanna*, 532 U.S. at 405.  Importantly, the Supreme Court has not conclusively held that this second exception exists.  *See United States v. Johnson*, 544 U.S. 295, 304 n.4 (2005); *Alaska v. Wright*, 141 S. Ct. 1467, 1468 (2021) (not including the second exception when describing a petitioner's limited ability to attack the first conviction under *Lackawanna*).  And, despite Petitioner's contention that *Lackawanna*'s "'second exception' has been recognized by hundreds of federal courts," there is no consensus among the courts of appeal as to whether courts are required to or should recognize *Lackawanna*'s second exception.  *See, e.g., Dockery v. Lee*, 2022 WL 16543813, at *3 (2nd Cir. Oct. 31, 2022) (noting that the Second Circuit "has not conclusively held that this second exception exists."); *Drakes v. I.N.S.*, 330 F.3d 600, 606 (3d Cir. 2003) (discussing whether the petitioner fell within the second exception after noting that the Supreme Court expressly chose not to define the rare cases falling under the second exception); *McCormick v. Kline*, 572 F.3d 841, 851 (10th Cir.2009) ("We have recognized the [*Lackawanna*] plurality's second exception as good law.").

19

These circumstances demonstrate that the second exception is not "clearly established federal law" for federal habeas purposes. *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (holding that lack of Supreme Court holding on specific issue precludes finding that state court decision on that issue was contrary to or unreasonable application of clearly established federal law); *Carrero v. Metzger*, 2018 WL 4567124, at *9 (D. Del. Sept. 24, 2018) (concluding that, "at a minimum, the circuit split demonstrates that there is no clearly established federal law" governing the petitioner's argument for federal habeas relief). Accordingly, Judge Stark did not err by not expressly addressing the second exception when deciding that habeas review of Claim Thirteen was not available under the circumstances of Petitioner's case.

And this is where the Court finds it beneficial to clarify the reasoning supporting denial of Claim Thirteen. Petitioner contends that Judge Stark erred by: (1)"blindly accept[ing] the Delaware Supreme Court's decision [in *Weber I*] that [Petitioner] could have challenged his prior forgery conviction by way of Rule 35(a) or certiorari without considering [the] myriad of proof that it is simply not true" (D.I. 136 at 13); and (2) holding that Petitioner "did not pursue collateral remedies for his 2001 forgery conviction" because he "directly and collaterally [challenged] his conviction fifteen (15) times" (D.I. 136 at 15). Neither contention is correct. It is well-settled that the highest court of the state is the "final arbiter of that state's law," *Sameric Corp. of Del. Inc. v. City of Philadelphia*, 142 F.3d 582, 592-93 (3d Cir. 1998), and a federal court on habeas review is bound by a state's highest court's interpretation of state law, "including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Consequently, Petitioner has not shown that Judge Stark erred by relying on the *Weber I* court's holding that Petitioner had avenues of review available to him with respect to his 2001 forgery conviction prior

to the original enhancement of his robbery sentence in 2005 and the enhancement of his robbery sentence after retrial in 2010.

Additionally, Judge Stark did not "hold" that Petitioner failed to pursue collateral remedies for his 2001 forgery conviction.  Rather, a fair reading of Judge Stark's overall analysis of Claim Thirteen demonstrates that the statement regarding Petitioner's failure to pursue collateral remedies was a shorthand way of referencing *Lackawanna*'s rule of non-reviewability.  For instance, when considering the applicability of *Lackawanna* to Petitioner's case, Judge Stark started by setting forth the *Lackawanna* rule of non-reviewability, including the express exception for Sixth Amendment *Gideon* claims, and then stated, "[i]n this case, Petitioner did not pursue collateral remedies for his 2001 forgery conviction and he does not raise a Sixth Amendment claim in connection with his 2001 forgery conviction."  *Weber*, 2022 WL 4598567, at *32.  While it would have been more straightforward to include all of *Lackawanna*'s language so that the sentence stated "Petitioner failed to pursue remedies while they were available (or because he did so unsuccessfully)," the omission of the clarifying phrase does not demonstrate that Judge Stark mistakenly held that Petitioner did not pursue any collateral remedies.  In fact, the opening portion of Judge Stark's analysis for Claim Thirteen explicitly identified the Delaware Supreme Court's 2019 decision in Petitioner's forgery case – *Weber Forgery I* – as addressing the issues in Claim Thirteen, thereby acknowledging that Petitioner did pursue collateral remedies for his forgery conviction.  *See Weber*, 2022 WL 4598567, at *29.

Reviewing the records for Petitioner's forgery and robbery cases in conjunction with this clarification demonstrates why Petitioner's instant attempt for reconsideration is unavailing, even if the second exception is good law and available.  Petitioner was convicted of second degree forgery on July 9, 2001 and sentenced to thirty-days on October 25, 2001.  (D.I. 95-1 at Entry Nos,

11, 16).  He filed a notice of appeal in the Delaware Supreme Court on November 17, 2001 and, two days later, filed a Rule 35 motion for modification of sentence in the Superior Court.  (D.I. 95-1 at Entry Nos. 22, 23).  On December 5, 2001, the Superior Court denied the Rule 35 motion for lack of jurisdiction due to the pending appeal.  (D.I. 95-1 at Entry No. 20).  On October 4, 2002, the Delaware Supreme Court dismissed Petitioner's direct appeal for lack of jurisdiction because Petitioner's sentence did not exceed thirty days.  (D.I. 95-1 at Entry No. 34).  Three years later, on November 10, 2005, Petitioner filed a motion to vacate judgment.  (D.I. 95-1 at Entry No. 36). The motion was never ruled on, and there is no indication on the docket that Petitioner ever inquired about the status of motion.  The next relevant filing in Petitioner's forgery case was on April 18, 2013, when Petitioner filed what appears to have been a motion to appoint counsel in order to file a Rule 35 motion.  (D.I. 95-1 at Entry Nos. 39, 40).

This record reveals that, prior to the first enhancement of his robbery sentence in 2005, Petitioner made two attempts to obtain collateral review of his forgery conviction and/or sentence: the Rule 35 motion filed while his direct appeal was already pending, and a motion to vacate sentence filed in November 2005 after the State had filed its motion to declare Petitioner a habitual offender in his robbery case on April 11, 2005.  (*See* D.I. 78-1 at Entry. No. 28).  Petitioner, however, did not diligently pursue the remedies that he initially attempted to obtain.  For instance, he did not file another Rule 35 motion after the dismissal of his appeal in 2002, nor did he inquire about the status of the motion to vacate when it was never ruled on.[7]  Petitioner's failure to pursue the challenges to his forgery conviction that he had initiated suggests a conscious choice to forego

---

[7]     In contrast, Petitioner's forgery and robbery dockets reveal that, once Petitioner started filing motions for collateral review in 2013, he consistently inquired about any apparent delay in ruling on those motions in both cases.

obtaining review of his forgery conviction and, therefore, demonstrates why his 2001 forgery conviction is presumptively valid under *Lackawanna*.

Petitioner, however, argues that his failure to pursue remedies for his forgery conviction should be excused under *Lackawanna*'s second exception because there are no viable mechanisms in Delaware for challenging his forgery conviction. He presents his unsuccessful attempts to obtain review of his 2001 forgery conviction and his enhanced robbery sentence in both of his cases from 2013 through 2019 to support his argument that, specifically, Rule 35 and certiorari were never viable mechanisms for him to obtain review of his forgery conviction.[8] The Court acknowledges the numerous unsuccessful collateral challenges Petitioner has lodged in both his forgery and robbery cases.[9] The Court also acknowledges Petitioner's frustration stemming from

---

[8]   Petitioner also contends that the Delaware Supreme Court reversed its holding in *Weber I* regarding the availability of remedies in a 2019 decision affirming the Superior Court's denial of a motion to vacate judgment that he filed in his forgery case. (*See* D.I. 143 at 2, ¶4, referencing *Weber v. State*, 2019 WL 3268813, at *3). In that appeal, Petitioner argued that he "did not have meaningful channels to challenge the constitutionality of his Forgery conviction" and that the Delaware Supreme Court "should find that his forgery conviction does not qualify as a predicate offense for sentence enhancement purposes because he could not have asserted his federal rights in State court through a motion for postconviction relief or writ of certiorari, or a Rule 35 motion for sentence correction." State Ans. Br., *Weber v. State*, 2018 WL 3210759, at *15 (Del. June 25, 2018). The Delaware Supreme Court viewed Petitioner's argument as challenging the validity of his habitual offender sentence for attempted robbery and a rephrasing of an unsuccessful argument Petitioner had raised in a successive Rule 61 motion in his robbery case. *See Weber*, 2019 WL 3268812, at *3-4. The Delaware Supreme Court stated, "[a]t this stage, [Petitioner] has no basis under Delaware law to continue to seek to repeatedly litigate the same issue." *Id*. at *3. When viewed in context with the procedural history of Petitioner's motion, the Delaware Supreme Court's statement did not amount to a "reversal" of its determination in *Weber I* about the remedies that were available to Petitioner prior to the enhancement of his robbery sentence in 2009. Rather, the Delaware Supreme Court was explaining that, in 2019, Petitioner's repetitive challenge to his enhanced sentence was barred under Delaware law.

[9]   The Court cannot opine on the viability of Rule 35 and certiorari as mechanisms for obtaining review of Petitioner's 2001 forgery conviction because that is an issue of Delaware state law.

the fact that the Rule 35 motions he filed in both cases have been denied on the basis that he cannot use Rule 35 to challenge a conviction,[10] as opposed to a sentence.[11]  Nevertheless, for the following reasons, the Court concludes that, even if the purported second exception exists, it does not apply here.

---

[10]   In 2013, the Superior Court advised Petitioner in an order denying his request for the appointment of counsel that a "Rule 35 motion is not a proper mechanism to challenge rulings that have been made during a trial."  (D.I. 95-1 at Entry No 41).  There is no indication that Petitioner appealed that ruling.  It also appears that the Superior Court may have refused to allow him to challenge his forgery conviction under Rule 35(a) in an April 30, 2016 order denying his motion for default, summary, and relief of judgment. (D.I. 95-1 at Entry No. 52).  There is no indication that Petitioner appealed that ruling. While Petitioner points to these Superior Court denials as evidence that Rule 35 is not a viable mechanism for challenging his forgery conviction, Petitioner's failure to appeal those denials prevents a definitive determination on viability.  *See, e.g., Weber*, 792 F. App'x at, 217 (when addressing Petitioner's contentions regarding the unavailability of Rule 35 and certiorari, the Third Circuit noted that, "[t]o the extent that the Superior Court concluded, in one or more post-2009 rulings, that Weber could not challenge his forgery conviction under Rule 35 or via a petition to the DSC for a writ of certiorari, Weber's recourse was to appeal those rulings to the DSC.  Weber has not pointed us to any DSC decision that resolved such an appeal."); *Matter of Weber*, 189 A.3d 184 (Table), 2018 WL 2446803, at *1 (Del. May 30, 2018) (denying Petitioner's request for a writ of mandamus ordering the Superior Court to permit him to challenge his forgery conviction via a Rule 35 motion, in part because "he could have filed a notice of appeal from the Superior Court's April 20, 2016 order, but did not do so.").

[11]   In contrast, it does not appear that Petitioner has ever challenged the constitutionality of his forgery conviction via a petition for writ of certiorari.  Indeed, Petitioner himself does not list a petition for writ of certiorari in his list of motions he has filed.  (*See* D.I. 58-1 at 16-17; D.I. 95-8 at 21).  In 2018 Petitioner did file in his forgery case a petition to invoke the original jurisdiction of the Delaware Supreme Court under Delaware Supreme Court Rule 43, where he asked the Delaware Supreme court to "issue a writ of mandamus ordering the Superior Court to allow him to challenge his Forgery in the Second Degree conviction under Superior Court Criminal Ruel 35(a)."  *Matter of Weber*, 189 A.3d 194 (Table), 2018 WL 2446803, at *1 (Del. May 30, 2018), *rearg't den.* (June 20, 2018).  The Delaware Supreme Court denied Petitioner's request, explaining that Petitioner did not satisfy the criteria for issuance of a writ of mandamus.  *Id*.  The Court notes that asking the Delaware Supreme Court to exercise its original jurisdiction to order the Superior Court to perform a duty is completely different from asking the Delaware Supreme Court to exercise its original jurisdiction review his forgery conviction.

In 2009, when the *Weber I* court reversed Petitioner's robbery conviction, it also identified two possible mechanisms Petitioner could have used to challenge his 2001 forgery conviction: Rule 35 and certiorari.[12]  At that point in time, Petitioner was facing a retrial for his robbery charge and was well aware that his 2001 forgery conviction would most likely be used as a predicate conviction to enhance any sentence he might receive if he were found guilty of robbery upon retrial.  Petitioner clearly disagreed that Rule 35 and certiorari were viable mechanisms for challenging his forgery conviction, as demonstrated by the arguments he put forth during his direct appeal in his robbery case that led to the *Weber I* decision.  *See Weber v. State,* 2008 WL 4992118, at *2 (Appellant's Supp. Op. Mem.) (Del. Oct. 1, 2008); *Weber v. State*, 2008 WL 5041918, at *2 (Appellant's Supp. Reply Mem.) (Del. Oct. 24, 2008).  In spite of his doubts concerning the mechanisms identified by *Weber I*, Petitioner did not attempt to file a new challenge to his forgery conviction at all, via any vehicle, between 2009 and 2010.  In fact, Petitioner did not attempt to file a new challenge to his forgery conviction until 2013.

Given these circumstances, the Court cannot find that Petitioner was faultless in failing to challenge the validity of his forgery conviction during the period of time when the vehicles identified by the *Weber I* court as possible remedies were available, namely, prior to the 2010 enhancement of his burglary sentence.  Nor did any Delaware state court unjustifiably refuse to rule on any properly presented[13] constitutional claim challenging his 2001 forgery conviction

---

[12]    In Delaware, a "writ of certiorari is an extraordinary remedy that is used to correct irregularities in the proceedings of a trial court," and "is only available to challenge a final order of a trial court where the right of appeal is denied, a grave question of public policy and interest is involved, and no other basis for review is available." *In re Butler*, 609 A.2d 1080, 1081 (Del. 1992).  "Where these threshold requirements are not met, [the Delaware Supreme Court] has no jurisdiction to consider the petitioner's claims." *In re Salah*, 929 A.2d 784 (Del. 2007).

[13]    The Court recognizes that Petitioner would argue there was no mechanism by which he could have "properly presented" a constitutional claim challenging his 2001 forgery

before the 2001 forgery conviction was used to enhance his robbery sentence in 2010. Consequently, pursuant to *Lackawanna*'s rule of non-reviewability, Petitioner's 2001 forgery conviction is conclusively valid.  Thus, as Judge Stark held, Petitioner is barred from challenging his enhanced sentence under § 2254 on the ground that his 2001 forgery conviction was unconstitutionally obtained.

In sum, although Petitioner's arguments suggest a benefit to providing further clarification of the denial of Claim Thirteen, the Court concludes that Petitioner has failed to demonstrate that the dismissal of Claim Thirteen was premised on a mistake of law or fact or that it will result in a manifest injustice.  Petitioner falls within the rule of habeas non-reviewability set forth by the Supreme Court in *Lackawanna*, and he does not satisfy either the well-established "*Gideon*" exception nor the potential "no fault" second exception.  Because none of the exceptions to *Lackawanna* apply, Petitioner's 2001 forgery conviction is conclusively valid, thereby barring him from challenging his enhanced sentence under § 2254 on the ground that his 2001 forgery conviction was unconstitutionally obtained.  Accordingly, Petitioner's instant argument does not warrant reconsideration of Claim Thirteen.

### G. Claim Sixteen: Attempted Robbery Conviction Not a Predicate Offense for Habitual Offender Status

In Claim Sixteen of his Petition, Petitioner argued that his conviction for attempted robbery is not an offense that qualified him for habitual offender treatment under 11 Del. C. § 4214(c). Judge Stark denied the Claim because "Petitioner's challenge to the Superior Court's interpretation and application of well-settled Delaware law does not present an issue cognizable on federal habeas review."  *Weber*, 2022 WL 4598567, at *33.  In his Motion for Reconsideration, Petitioner

---

conviction.  Nevertheless, he never tested the viability of the two mechanisms identified by the Delaware Supreme Court in *Weber I* prior to the enhancement of his 2010 robbery sentence.

contends that Judge Stark misconstrued his argument, and then proceeds to essentially re-assert the same statutory interpretation argument he presented in his Petition.  He cites several federal cases and one Pennsylvania case to support his argument that the Superior Court erred in its statutory interpretation.  (D.I. 136 at 15-16).

Petitioner's argument is unavailing.  The cases to which he cites are inapposite because all but one involve a federal court's interpretation of federal law, and the other case involves a Pennsylvania state court's interpretation of Pennsylvania law.  Claim Sixteen involves a Delaware court's interpretation of well-settled state law which, as Judge Stark held, is not cognizable on federal habeas review.  Accordingly, Petitioner's instant argument does not warrant reconsideration of Claim Sixteen.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will: (1) grant Petitioner's Motion to Supplement his Motion for Reconsideration (D.I. 140); (2) deny as moot his Motion to Withdraw the Memorandum Opinion dated September 30, 2022 (D.I. 135); and (3) deny Petitioner's supplemented Rule 59(e) Motion for Reconsideration (D.I. 136; D.I. 140).  To the extent one may be necessary, the Court also declines to issue a certificate of appealability with respect to its denial of the instant Motion for Reconsideration and Supplemental Memorandum, because Petitioner has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see United States v. Eyer*, 113 F.3d 470 (3d Cir. 1997); 3d Cir. LAR 22.2 (2011). An appropriate order will follow.